IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID MATHIAS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROBERT COLLINS, et al. | : | NO. 13-2002 |

MEMORANDUM

Bartle, J.                                          November 5, 2014

David Mathias brings this pro se petition for a writ of
habeas corpus under 28 U.S.C. § 2254 against Robert Collins, the
Superintendent of the State Correctional Institution in Frackville,
Pennsylvania, and the Attorney General of the Commonwealth of
Pennsylvania (collectively the "Commonwealth").  In his petition
Mathias alleges that his incarceration pursuant to a 2006 conviction
for first-degree murder and associated charges is in violation of
the Constitution of the United States.  Before us are Mathias's
timely objections to the Report and Recommendation of the Magistrate
Judge that his petition be denied.  We review the report and
recommendation of a magistrate judge de novo.  28 U.S.C.
§ 636(b)(1)(C).

Mathias maintains that he was denied the effective
assistance of counsel pursuant to the Sixth Amendment as
incorporated into the Fourteenth Amendment because his counsel on
direct appeal filed a deficient brief.[1]  He further asserts the
denial of due process of law as guaranteed by the Fourteenth

---

[1]  In this Memorandum, the court will simply use the shortened
term "Sixth Amendment."

Amendment.  Mathias focuses his petition on the argument that the jury instructions on the charge of first-degree murder given at his trial in the Court of Common Pleas of Philadelphia County relieved the Commonwealth of its obligation to prove beyond a reasonable doubt that he harbored the specific intent to kill.

I.

The following facts and procedural history are taken in the light most favorable to the Commonwealth.  At approximately 12:45 a.m. on May 23, 2005, Mathias and Richard Jarmon ("Jarmon") went to a boardinghouse where Eric Richardson ("Richardson") lived. Mathias was familiar with Richardson.  He knocked on the door of Richardson's room, and Richardson answered, stepped out into the hallway, and closed the door behind him.  In the meanwhile Jarmon had sat down in an adjacent room where Joseph Drew El ("Drew El") was watching television.

Mathias asked Richardson for change for a five-dollar bill.  Richardson then returned to his room.  After he came back out into the hallway and handed five one-dollar bills to Mathias, Mathias asked Jarmon, "Are you ready?"  The two men drew firearms from their waistbands.

It is undisputed that Jarmon shot Drew El three times and killed him.  Jarmon then turned his weapon on Richardson while Mathias had also aimed his firearm at Richardson's stomach.

-2-

Richardson seized Mathias's arm, but Mathias fired multiple rounds.
Despite being shot five times, Richardson managed to escape the
building and flag down the police.  Investigators determined that
nine-millimeter and .45-caliber handguns had been discharged during
the boardinghouse encounter.  Mathias was apprehended several weeks
later and was found with a magazine for a nine-millimeter pistol at
the time of his arrest.

Mathias was tried in the Court of Common Pleas of
Philadelphia County (Criminal Action # CP-51-CR-0808071-2005).  The
jury found him guilty of the first-degree murder of Drew El,
conspiracy to commit first-degree murder of Drew El, aggravated
assault, possession of an instrument of crime, and carrying a
firearm without a license.  He is currently serving a life sentence
on the murder conviction.  A 15 1/2 - 31 year-sentence on the
conspiracy charge was imposed to run consecutively to his
imprisonment on first-degree murder, with terms of incarceration,
concurrent with his conspiracy sentence, for aggravated assault,
possession of an instrument of crime, and carrying a firearm without
a license.[2]

On direct appeal to the Pennsylvania Superior Court,
Mathias raised four issues through his appellate counsel.  First, he

---

[2]   Those terms are:  5 - 10 years for aggravated assault; 2 1/2 -
5 years for possessing an instrument of crime; and 3 1/2 - 7
years for carrying a firearm without a license.

argued that the jury instruction on criminal conspiracy was
erroneous and constituted a due process violation. Second, he
contested the jury instructions as they pertained to his aggravated
assault and weapons charges. His third argument was that the jury
was not adequately instructed on the necessity of finding a specific
intent to kill to sustain conviction on first-degree murder "on a
conspiracy theory of liability." Finally, Mathias contested the
sufficiency of the evidence on all counts.

        The Superior Court denied the appeal in its entirety on
the grounds of waiver. The court concluded that Mathias had waived
the first two issues because his appellate counsel cited no
authority in his brief. In the alternative the court denied on the
merits Mathias's first issue, that is, his contention that the jury
was incorrectly instructed on conspiracy. The Superior Court also
deemed waived for failure to cite pertinent portions of the trial
record his claim with regard to jury instructions on the specific
intent requirement for conspiratorial liability. His sufficiency of
the evidence issue, which was presented only in cursory fashion, was
deemed to be waived as undeveloped. Thus the Superior Court
addressed on the merits only the conspiracy charge.

        Mathias thereafter filed a petition under the Pennsylvania
Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541
et seq. He was originally represented by counsel in this phase of

his case.  However, his counsel eventually withdrew after coming to
the conclusion that his petition was without merit.  Mathias himself
then raised claims of ineffective assistance of counsel based on the
filing by his appellate counsel of a deficient brief and appellate
counsel's failure to contest the jury instructions on first-degree
murder, specific intent, and accomplice liability.  The Court of
Common Pleas treated these new issues as an amended petition and
dismissed them as undeveloped.  Mathias's PCRA appeal to the
Superior Court followed.  We concern ourselves here with those
issues which Mathias raised pro se and which the Superior Court
addressed.

Mathias contended that he was denied effective assistance
of counsel on direct appeal because his appellate lawyer's deficient
brief caused all of the arguments contained within it to be waived.
Included was his argument that his appellate counsel was ineffective
for failing properly to contest the manner in which the trial court
charged the jury on first-degree murder, specific intent, and
accomplice liability.  Specifically, Mathias referenced counsel's
failure to object to the jury instructions allowed the jury to find
him guilty of first-degree murder without finding that he had the
specific intent to kill Drew El.  The Superior Court ruled in favor
of the Commonwealth on each of these issues.

-5-

The Superior Court first determined that Mathias was not "entirely deprived" of his appellate rights because the court on direct appeal had "addressed the merits of several, though not all, of [Mathias's] issues" despite a formal waiver.  Commonwealth v. Mathias, No. 2297 EDA 2011, slip op. at 10 (Pa. Super. Ct. Oct. 25, 2012).  It then addressed in detail appellate counsel's failure to contest the jury instructions on first-degree murder.  After considerable discussion this claim was denied for two reasons.  The court first noted that the jury had been properly instructed on the element of specific intent to kill before the challenged instructions at issue were read.[3]  It also reasoned that Mathias suffered no prejudice from any error because the jury independently found that Mathias had the specific intent to kill in convicting him of conspiracy to commit first-degree murder, a count which required such a finding.  The court thus denied Mathias's claims of ineffective assistance of appellate counsel in their entirety.

Having failed to obtain relief in the state courts, Mathias filed the instant pro se § 2254 petition.  Mathias asserts in this petition that he received ineffective assistance of appellate counsel that caused all issues to be waived.  Beyond generally objecting to the quality of his appellate brief, however,

---

[3]  The Superior Court did not explicitly agree that the instructions that Mathias challenges were improper but rather stated that the instructions were "less than precise" and "lacked clarity."

Mathias does not separately contest in his § 2254 petition the matters previously litigated on direct appeal:  the jury instructions on conspiracy, aggravated assault, possession of an instrument of crime, or carrying a firearm without a license, or the sufficiency of the evidence.  As in the state court, his § 2254 petition also raises the issue that the jury instructions on first-degree murder failed to afford due process of law because they "permitted a first degree murder conviction based solely on [the] intent of [his] accomplice."  The Magistrate Judge recommended that the petition be denied because any error by appellate counsel caused no prejudice and any error in the jury instructions was harmless.

II.

We begin with the standard of review under 28 U.S.C. § 2254(d).  The statute provides that a writ of habeas corpus may issue on the basis of a claim adjudicated on the merits in state court only if the claim:

> (1)  [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  We are only concerned with subsection (1) in this case.  Mathias does not contend that the Superior Court made

-7-

any unreasonable determination of the facts in light of the evidence
presented at trial.

The "contrary to" and "unreasonable application" clauses
of § 2254(d)(1) have independent meaning.  Williams v. Taylor, 529
U.S. 362, 405 (2000).  A state court decision is "contrary to"
clearly established federal law when it either arrives at a
conclusion opposite to that of the Supreme Court on an issue of law
or when it confronts facts materially indistinguishable from a
relevant Supreme Court precedent and arrives at an opposite result.
Id.  If the state court properly identifies the appropriate Supreme
Court precedent, we must determine whether it unreasonably applied
that precedent.  Id. at 407.  A federal court may not grant relief
simply because it believes the state court's adjudication of the
claim was incorrect.  Id. at 411.  Rather, the court must be
convinced that the state court's adjudication of the claim was
objectively unreasonable.  Id.

The court may ordinarily address on the merits only those
issues that have been raised in a petition and for which the
petitioner has exhausted his or her state remedies.  See Cullen v.
Pinholster, 131 S. Ct. 1388, 1398 (2011); Duncan v. Henry, 513 U.S.
364, 365 (1995).  Our Court of Appeals has held that to "fairly
present" a federal constitutional claim to the state courts, a
petitioner must submit "[b]oth the legal theory and the facts

-8-

supporting" the claim to the state courts.  Nara v. Frank, 488 F.3d 187, 197-98 (3d Cir. 2007); Lesko v. Owens, 881 F.2d 44, 50 (1989).

A pro se § 2254 petition must be liberally construed. Rainey v. Varner, 603 F.3d 189, 198 (3d Cir. 2010).  A petitioner need not cite to book and verse or invoke specific phraseology so long as its "substantial equivalent" was presented to the state court.  Picard v. Connor, 404 U.S. 270, 278 (1971); McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).  Some of the ways a petitioner may do so are by relying on pertinent federal cases employing constitutional analysis, referencing state cases employing constitutional analysis in like fact situations, asserting the claim in terms so particular as to call to mind a specific right protected by the Constitution, or by alleging a pattern of facts that is well within the mainstream of constitutional litigation.  McCandless, 172 F.3d at 261-62; (quoting Evans v. Ct. of Com. Pl., Del. Cnty., Pa., 959 F.2d 1227, 1232 (3d Cir. 1992)).  The state court is not compelled to tilt at constitutional windmills that the petitioner has not raised, but it must take into account federal issues presented in the petitioner's pleadings and briefs submitted to the court.  See Nara, 488 F.3d at 199.

III.

We first analyze the contention of Mathias that his appellate counsel gave him ineffective assistance by causing the

-9-

waiver of all of his claims on appeal.  A criminal defendant is guaranteed counsel under the Sixth Amendment, which states:  "In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense."  U.S. Const. amend. XI. Of course, that assistance must be effective for it to be assistance at all.  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  The right to effective assistance of counsel exists to ensure that the accused is afforded a fair trial.  Strickland v. Washington, 466 U.S. 668, 685 (1984).  A criminal defendant is entitled to the effective assistance of counsel on direct appeal.  Evitts v. Lucy, 469 U.S. 387, 396 (1985).

Whether an attorney rendered ineffective assistance on appeal is determined under the familiar two-pronged inquiry enumerated in Strickland v. Washington.  Smith v. Robbins, 528 U.S. 259, 285 (1984).  Under Strickland, a petitioner must establish: (1) that his or her "counsel's performance was deficient," that is, that it fell below "an objective standard of reasonableness"; and (2) that "the deficient performance prejudiced him [or her]." Strickland, 466 U.S. at 687-88.  In order to show prejudice, the petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

-10-

The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689.

In this matter, as explained above, the Superior Court determined on direct appeal that each of the issues Mathias raised was waived for failure to cite either relevant authority or appropriate portions of the trial record.  On post-conviction review before the same court, Mathias contended that his appellate counsel was deficient in filing the defective brief that caused this waiver.

The Superior Court, in reviewing Mathias's PCRA petition, agreed that his counsel's brief was inadequate.  Commonwealth v. Mathias, No. 2297 EDA 2011, slip op. at 10 (Pa. Super. Ct. Oct. 25, 2012).  It nonetheless concluded that Mathias was not "entirely deprived of his right to direct appeal," because the Court, on direct appeal, had, in the alternative, discussed and denied on the merits some of the issues raised by Mathias.  Id.  The Superior Court denied Mathias post-conviction relief without identifying or addressing either prong of the Strickland standard.  Id.

The Magistrate Judge was correct in her conclusion that the Superior Court addressed Mathias's claim in a manner contrary to Strickland.  Under Strickland, as noted above, a court must determine whether the performance of counsel fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.  If the performance of counsel was deficient, the court must also assess the

-11-

probability that the outcome would have been different in the
absence of counsel's error.  Id. at 694.  The Superior Court did not
delve into these questions but instead simply ruled that Mathias was
not "entirely deprived" of his right to appeal.  This reliance on
the degree of deprivation without more is contrary to Strickland.
See Williams v. Taylor, 529 U.S. 362, 405 (2000); Smith v. Robbins,
528 U.S. 259 (2000).  We afford the Superior Court's conclusion no
deference as a result.

  We must therefore conduct our own review, de novo, of
Mathias's claim for ineffective assistance of appellate counsel to
determine if "he is in custody in violation of the Constitution or
laws or treaties of the United States."  28 U.S.C. § 2254(a);
Bronshtein v. Horn, 404 F.3d 700, 724 (3d Cir. 2005).  Here Mathias
objects to the Magistrate Judge's conclusion that he failed to
demonstrate prejudice as required under Strickland.  We must limit
our review to those specific issues on which, in his view, counsel
was ineffective.  See Strickland, 466 U.S. at 687.

  We begin with his ineffective assistance of counsel claim
that his counsel failed adequately to brief several issues.  The
only one of these inadequately briefed issues that Mathias
specifically mentions at this stage is the sufficiency of the
evidence.  Mathias protests that no court has reviewed the evidence
presented at trial to determine whether it passes constitutional

muster.  Nonetheless, he makes no attempt in his petition or
briefing to satisfy his burden of demonstrating a reasonable
probability that the Superior Court would have ruled in his favor on
this issue had his counsel filed an adequate brief on direct appeal.
He has therefore failed to demonstrate any prejudice on this issue
as required under Strickland.  Strickland, 466 U.S. at 694.

Mathias is silent as to the remaining issues actually,
albeit inadequately, raised in his brief on direct appeal.  We may
only grant a § 2254 petition on those grounds for relief actually
raised by a petitioner.  See Cullen v. Pinholster, 131 S. Ct. 1388,
1398 (2011).  He makes no attempt to explain how he was prejudiced
with respect to the jury instructions on conspiracy, aggravated
assault, and his weapons charges.  He cites no authority in this
regard.  Mathias has waived any ineffective assistance of counsel
claim based on these issues.

In addition, Mathias contended in his PCRA petition that
appellate counsel was ineffective for failing to address at all the
manner in which the trial court charged the jury on "first degree
murder, specific intent, and accomplice liability."  The Superior
Court specifically ruled on this issue.  The Magistrate Judge did
not address this it, however, because in her view it was not raised
here.  Mathias's § 2254 petition asserts that his attorney's
performance was deficient because he "failed to develop argument

-13-

resulting in waiver of all the issues."  It proceeds to state
further that the trial court instructions were "unconstitutional"
because they "permitted a first degree murder conviction based
solely on [the] intent of [his] accomplice."  Mathias explained that
this issue was not raised on direct appeal because his "attorney
waived all claims."  His current petition thus preserves his
challenge to the constitutionality of the jury charge on first-
degree murder as a violation of his Sixth Amendment guarantee of
effective assistance of counsel.

        When a petitioner argues ineffective assistance of counsel
based on failure to raise an issue, the court must first decide
whether the underlying issue has merit.  United States v. Baird, 218
F.3d 221, 225 (3d Cir. 2000).  We therefore begin by reviewing in
detail the jury instructions that Mathias challenges.  A reviewing
court must consider the instructions as a whole.  Estelle v.
McGuire, 502 U.S. 62, 72 (1991); Commonwealth v. Cook, 952 A.2d 594,
626-27 (Pa. 2008).

        The Common Pleas Court judge charged the jury at the close
of a multi-day trial.  He delivered the instructions first in a
preliminary fashion, stating:

                I'm going to have a plain English
        talk with you now before I get to the point
        where I read all of the legal stuff to you.
                All my jurors tell me after the fact
        that they appreciate this common sense view,
        because we want you to bring your common sense

                                -14-

> here.  But I want to break it down to you.  I
> want to tell you some things about these
> charges, how they relate to each other, and how
> I'm going to proceed in my formal charge to
> you.

As part of this "plain English talk," the trial judge described to
the jury what each of the charged homicide offenses, that is first-
degree murder, second-degree murder, and third-degree murder,
entails, as well as the general contours of accomplice liability.

The trial judge reiterated several times the preliminary
nature of the charge then being given.  Before explaining accomplice
liability, he cautioned that "[t]his is still not my formal charge
but it will help you to receive the charge when I do give it to
you."  He again emphasized the preambular character of his words in
discussing the differences between first- and second-degree murder:
"It will become clear to you once I give it to you, because you are
going to be hearing things over and over again, and I'll be making
things clear to you."

At this stage, as to first-degree murder, the court
instructed the jury that "[f]irst degree murder ... requires a
specific intent -- proof beyond a reasonable doubt that the
defendant had a specific intent to kill.  Shorthand way of saying
that, they have to prove that he intended specifically to kill
Joseph Drew El."  The trial judge repeated that the "difference
between first degree and third degree [murder] is that there will be

-15-

an additional requirement that in causing the death of Joseph Drew

El that the defendant had the specific intent to kill Joseph Drew

El." The trial court further noted:

> Now, if you should find that the
> accomplice had the specific intent to kill by
> utilizing a deadly weapon on the body of Joseph
> Drew El, that is not enough here.
>         You are going to hear this Court say
> that if that is your finding, you cannot find
> the defendant guilty, unless you find beyond a
> reasonable doubt that there has been proof
> beyond a reasonable doubt that the defendant
> shared that specific intent to kill Joseph Drew
> El. All right? It will be clear to you.

After giving additional preliminary comments about the homicide

offenses with which Mathias was charged, the trial court began its

formal charge.

The formal instructions on specific intent contrasted with

the earlier, informal charge in a crucial respect. At this later

point the trial court explained that Mathias could be found guilty

of first-degree murder if he or his accomplice was proven beyond a

reasonable doubt to have the specific intent to kill Drew El:

> First degree murder is a murder in
> which the killer has the specific intent to
> kill. You may find the defendant guilty of
> first degree murder if you are satisfied that
> the following three elements have been proven
> beyond a reasonable doubt:
>         First, that Joseph Drew El is dead.
>         Second, that the defendant or his
> alleged accomplice, Richard Jarmon, caused
> Joseph Drew El's death.
>         And, third, that the defendant or his
> alleged accomplice, Richard Jarmon, did so,

-16-

<u>that is caused Joseph Drew El's death, with the</u>
<u>specific intent to kill and with malice.</u>

(Emphasis added.)  The court repeated this formulation of the

specific intent requirement:

> The specific intent to kill,
> including the premeditation needed for first
> degree murder, does not require planning or
> previous thought or any particular passage of
> any length of time.  It can occur quickly.
> All that is necessary is that there
> be enough time so that the defendant <u>or an</u>
> <u>alleged accomplice</u> can and does fully form an
> intent to kill and is conscious of his own
> intention.
> When deciding whether the defendant,
> David Mathias, <u>or his alleged accomplice,</u>
> <u>Richard Jarmon</u>, had the specific intent to
> kill, you should consider all of the evidence
> regarding their respective words and conduct
> and the attending circumstances that may show
> their respective state of mind.
> If you believe that David Mathias <u>or</u>
> <u>his alleged accomplice, Richard Jarmon,</u>
> intentionally used a deadly weapon on a vital
> part of Joseph Drew El's body, you may regard
> that as an item of circumstantial evidence from
> which you may, if you choose, infer that David
> Mathias <u>or his alleged accomplice, Richard</u>
> <u>Jarmon</u>, had the specific intent to kill.

(Emphasis added.)  Thus the formal charge stated, indeed stated more

than once, that the jury could find Mathias guilty of first-degree

murder if it found that his accomplice Richard Jarmon alone had the

specific intent to kill Drew El.  Mathias's trial counsel objected

unsuccessfully to the discrepancy between this later charge and the

earlier, informal charge.  His appellate counsel did not raise the

issue on appeal.

-17-

As noted above, Mathias's contention that his appellate counsel was ineffective in failing to raise this issue depends on whether it has merit.  United States v. Baird, 218 F.3d 221, 225 (3d Cir. 2000).  Generally speaking, a state is free to define the elements of a crime.  See Jones v. United States, 526 U.S. 227, 241 (1999).  Once it has done so, however, the Supreme Court has ruled that due process requires the state to prove every one of those elements beyond a reasonable doubt.  In re Winship, 397 U.S. 358, 364 (1970).  A due process violation exists when an ambiguous jury instruction creates a "reasonable likelihood" that the jury applied instructions in a manner that relieves the state of this burden.  Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)).  Thus, an erroneous jury instruction on the elements of a criminal offense can present issues of both state and federal constitutional law for direct appeal.

In Pennsylvania it is a required element of first-degree murder that the defendant himself independently possessed the specific intent to kill.  Commonwealth v. Chamberlain, 30 A.3d 381, 394 (Pa. 2011); Commonwealth v. Daniels, 963 A.2d 409, 429 n.16 (Pa. 2009).  At least a portion of the jury instructions in this case unconstitutionally permitted the jury to convict Mathias of first-degree murder without finding the crucial element under Pennsylvania

law that Mathias himself, as opposed to Jarmon, had the specific intent to kill Drew El.  In re Winship, 397 U.S. at 364.

The Superior Court found no error during PCRA review.  In denying Mathias's petition, the Superior Court determined that the trial court's earlier, informal instructions which correctly stated the law alleviated any harm that might have flowed from the trial court's later incorrect formal charge.  The Superior Court's decision was contrary to clearly established Supreme Court precedent.  See Williams v. Taylor, 529 U.S. 362, 405 (2000).  While jury instructions are to be considered as a whole in examining them for error, the Supreme Court has previously declared:  "[l]anguage that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity.  A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict."  Francis v. Franklin, 471 U.S. 307, 322 (1985).

That is precisely the case here.  We have no way of knowing if the jury followed the informal, "plain English" charge which required it to find that Mathias had a specific intent to kill Drew El if he was to be found guilty or the later, formal charge which allowed the jury to convict Mathias without finding that he,

as opposed to Jarmon, had a specific intent to kill.[4]   Under Francis

such a contradictory charge violates due process.   Id. at 325.   The

charge also relieved the Commonwealth of its burden of proving

beyond a reasonable doubt the key element that Mathias had a

specific intent to kill.   In re Winship, 397 U.S. at 364.

      The Superior Court, in denying any relief sought by

Mathias in his PCRA petition, also relied on the fact that the jury

convicted Mathias of conspiracy to commit first-degree murder.   As

the Superior Court reasoned, "the jury did find that [Mathias] had a

specific intent to kill Mr. El since it found him guilty of

conspiracy to commit first degree murder, which requires a finding

of specific intent to kill."   Thus, according to the Superior Court,

the jury found intent to kill independently of the faulty jury

instructions so any error was harmless.

      The verdict of guilty on conspiracy to commit first-degree

murder cannot reasonably rectify the constitutional error.   First,

the trial court issued a progression charge strongly suggesting that

the jury should consider each crime in the order of decreasing

seriousness and that it should consider conspiracy separately:

> The crimes are set out in the
> following order:  First degree murder, second
> degree murder, third degree murder are the
> first three.

---

[4]   The verdict sheet simply asked the jury to find whether
Mathias was guilty or not guilty of first-degree murder.  It did
not ask separately about the element of specific intent to kill.

> I suggest that you start at the top
> with the most serious charge.  Now, you don't
> have to do that but I'm giving you, you know,
> time tested, this is the best way to go about
> this verdict.
>
> [....]
>
> When you get to criminal conspiracy,
> I think I have made it quite clear that that is
> separate and apart from the first degree
> murder, second degree murder, and third degree
> murder crime.

As the Supreme Court has instructed, we must presume that the jury

followed the trial judge's guidance.  Weeks v. Angelone, 528 U.S.

225, 234 (2000).  The trial judge told the jury that the charge of

conspiracy is "separate and apart" from the charge of first-degree

murder and recommended as "timed tested" that conspiracy be

considered after its deliberation on the murder charges.  It would

be speculation on our part to view the sequence otherwise.  See

Francis, 471 U.S. at 322.  Conspiracy, a lesser charge than first-

degree murder, was listed after the various homicide offenses on the

verdict sheet.  Consequently the jury is presumed to have finished

its deliberations on first-degree murder before it reached the

separate issue of conspiracy.

Second, the jury instruction on conspiracy did not cure

the defect in the first-degree murder charge because the conspiracy

instruction incorporated by reference the flawed charge on first-

-21-

degree murder.[5]  When the trial judge began his instructions on
conspiracy, he explained:

> The object crime alleged to have been
> committed in this conspiracy, in other words,
> the crime that they allege was agreed to be
> committed was the killing -- the first degree
> murder killing of Joseph Drew El.
> <u>In this definition, it calls for a
> definition of first degree murder.  I have
> already given that to you.  I'm not going to
> repeat it.  Okay.  It is the exact same
> requirement, same elements.</u>

(Emphasis added.)  Moments later the trial judge gave the same
instruction again:

> The information alleges that the crime of first
> degree murder was the object of the conspiracy.
> I have previously defined that crime, first
> degree murder, for you.  I'm not going to
> repeat it.  Okay.  I'm not saying I won't
> repeat it, but at this point in time I'm not
> going to repeat it.  I have already given that
> to you.

At a later point, the trial court did properly explain that Mathias
could be found guilty of conspiracy only if he shared the specific
intent to kill with his alleged accomplice:  "The defendant, David
Mathias, is not guilty unless he and his alleged co-conspirator,
Richard Jarmon, had an agreement or common understanding and shared
the intent to commit the crime of first degree murder.  And that

---

[5]  Mathias, as explained above, has waived any challenge to the
conspiracy conviction and instructions.  Our discussion here is
limited to the effect that the conspiracy instructions had on
the constitutionality of Mathias's conviction for first-degree
murder.

would include the defendant having the -- having shared the specific
intent to kill." The trial judge repeated this explanation once
more towards the close of the instructions without explaining that
his earlier discussion of conspiracy was in error.

In sum, the instructions on conspiracy incorporated the
flawed instructions on first-degree murder alleviating the need for
the jury to find that Mathias had the specific intent to kill Drew
El, and at other places, the instructions included specific intent
to kill on the part of Mathias as an element of the crime of
conspiracy. Thus, a contradictory charge on conspiracy was given.
This clearly violates due process under the Supreme Court's
established holding in Francis. As a result, the conspiracy charge
did not cure the constitutional defect which infected the first-
degree murder conviction.[6] Francis, 471 U.S. at 322.

We conclude that the instructions on first-degree murder
violated the Due Process Clause of the Fourteenth Amendment

---

[6] The case of Bronshtein v. Horn, 404 F.3d 700 (3d Cir. 2005),
is distinguishable. In that case, the petitioner was convicted
of first-degree murder and conspiracy. The jury charge on
murder was constitutionally flawed as to the element of specific
intent to kill, but the conspiracy charge was correct on this
element. The court held that any error in the murder charge was
harmless because the jury independently found that the
petitioner in fact had the specific intent to kill by virtue of
the conspiracy conviction. Id. at 710. Bronshtein is
inapposite. In this case, unlike Bronshtein, the jury
instructions on conspiracy contained the same constitutional
error as the murder instructions. We further note that the
court distinguished Bronshtein in Laird v. Horn, 414 F.3d 419,
429-30 (3d Cir. 2005).

notwithstanding the separate conspiracy conviction.  Mathias's appellate counsel's performance in failing to raise on appeal the faulty first-degree murder instruction fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.

Furthermore, Mathias suffered prejudice as a result of this deficient performance, because there is a reasonable probability that the outcome of the appeal would have been different but for counsel's failure to contest the infirmity that existed with respect to the trial court's instructions on specific intent. Strickland, 466 U.S. at 694.  Had appellate counsel presented a developed argument citing Francis to the Superior Court, there is a reasonable probability that a new trial on the first-degree murder charge would have been ordered.  Strickland, 466 U.S. at 694.

For these reasons, Mathias is entitled to habeas relief under Strickland for appellate counsel's failure to challenge the jury instructions on specific intent to kill as an element of first-degree murder.

IV.

Finally Mathias has an additional claim in his § 2254 petition that the same jury instructions represent a freestanding violation of the Due Process Clause of the Fourteenth Amendment.  In his petition, Mathias states that the instructions were "unconstitutional" because they "permitted a first degree murder

-24-

conviction based solely on [the] intent of [his] accomplice."  Both parties have treated this as a due process issue in their briefs. The Commonwealth argues, and the Magistrate Judge agreed, that Mathias failed to exhaust this claim because he raised no due process claim on direct appeal or in his PCRA petition.  While the Superior Court on PCRA review considered the substance of this matter as part of its analysis of Mathias's Sixth Amendment claim, Mathias cited to the Winship and Francis decisions involving due process in his briefing before that court.  Indeed, his argument in support of his PCRA petition contains a detailed due process discussion.  This is sufficient to exhaust state remedies on this claim.  McCandless v. Vaughn, 172 F.3d 255, 261-62 (3d Cir. 1999); Veal v. Myers, 326 F. Supp. 2d 612, 622 (E.D. Pa. 2004).

The Fourteenth Amendment states in relevant part that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV § 1.  It guarantees that, once a state has exercised its prerogative in defining the essential elements of a criminal offense, it must prove each of those elements beyond a reasonable doubt at trial to convict a defendant.  In re Winship, 397 U.S. 358, 364 (1970).  When erroneous jury instructions relieve the state of this burden, a due process violation exists.  See Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009).  A constitutionally deficient instruction cannot be

cured by a contradictory instruction unaccompanied by an explanation of how to reconcile the discrepancy.  <u>Francis v. Franklin</u>, 471 U.S. 307, 322 (1985).

   As we have explained in detail above, the jury instructions on first-degree murder in Mathias's case contain such an irreconcilable contradiction as that discussed in <u>Francis</u>.  They improperly permitted the jury to convict Mathias of first-degree murder without a finding that he had the specific intent to kill Joseph Drew El.  The element of specific intent to kill is required for a conviction for first-degree murder under Pennsylvania law. <u>Commonwealth v. Chamberlain</u>, 30 A.3d 381, 394 (Pa. 2011); <u>Commonwealth v. Daniels</u>, 963 A.2d 409, 429 n.16 (Pa. 2009).  The instructions on first-degree murder in this case therefore violate the Due Process Clause of the Fourteenth Amendment.  <u>Francis</u>, 471 U.S. at 325; <u>In re Winship</u>, 397 U.S. at 364.

                                    V.

   Accordingly, we conclude that Mathias is in custody on a judgment of conviction for first-degree murder in violation of the United States Constitution.  28 U.S.C. § 2254(a).  His petition for a writ of habeas corpus will be granted with respect to his incarceration for that specific conviction.  We are not disturbing Mathias's convictions and incarceration for conspiracy to commit

first-degree murder, aggravated assault, possession of an instrument
of crime, or possession of a firearm without a license.